IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC, | § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 6:23-cv-00276-ADA |
| SALESFORCE.COM, INC., | § § | |
| Defendants. | § § § | |

**NON-PARTY OCO CAPITAL PARTNERS LP'S**
**OPPOSED MOTION FOR ATTORNEYS' FEES**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................. 2

III. ARGUMENT .................................................................................................................. 4

    A. Salesforce Must Reimburse Non-Party OCO For The Expenses It Incurred Complying With Salesforce's Discovery Demands .................................................. 4

        1. Salesforce Must Reimburse OCO Under FRCP 45(d)(2)(B)(ii) Because OCO Incurred Significant Expense Complying With Salesforce's Demands ................................................................................... 4

        2. Salesforce Should Also Have To Reimburse OCO Under FRCP 45(d)(1) Because Salesforce Imposed Undue Expenses On OCO .............. 6

    B. OCO Request For Attorneys' Fees Is Reasonable ................................................... 7

        1. OCO Strove For Efficiency In Responding To The Salesforce Subpoena ...................................................................................................... 7

        2. Salesforce Should Not Be Rewarded For Its Failure To Comply With Rule 45 ................................................................................................ 8

IV. CONCLUSION ............................................................................................................... 9

## **TABLE OF AUTHORITIES**

**Cases**

*Broussard v. Lemons*,
	186 F.R.D. 396 (W.D. La. 1999) ................................................................................................ 8

*In re Beltway Law Grp., LLC*,
	2017 Bankr. LEXIS 3802 (Bankr. D.D.C. Nov. 1, 2017) .......................................................... 6

*In re Modern Plastics Corp.*,
	890 F.3d 244, 252 (6th Cir. 2018) ......................................................................................... 5, 6

*Legal Voice v. Stormans Inc.*,
	738 F.3d 1178 (9th Cir. 2013) ................................................................................................ 5, 6

*Leonard v. Martin*,
	38 F.4th 481 (5th Cir. 2022) ............................................................................................. 1, 5, 6

*Linder v. Calero-Portocarrero*,
	251 F.3d 178 (D.C. Cir. 2001) ............................................................................................... 5, 6

*Shields v. Elevated Energy Sols., LLC*,
	2020 U.S. Dist. LEXIS 174515 (S.D. Tex. Sept. 23, 2020) ....................................................... 5

**Rules**

Fed. R. Civ. P. 45 ............................................................................................................................ 5

Fed. R. Civ. P. 45(d)(1) ........................................................................................................ 4, 6, 8, 9

Fed. R. Civ. P. 45(d)(2)(B)(ii) ........................................................................................................ 5

Pursuant to Rules 45(d)(1) and 45(d)(2)(B)(ii) of the Federal Rules of Civil Procedure ("FRCP"), non-party OCO Capital Partners LP ("OCO") respectfully moves this Court for an Order directing Defendant Salesforce.com, Inc. ("Salesforce") to reimburse OCO for the attorneys' fees OCO incurred complying with Salesforce's subpoena in the amount of $39,763, plus attorneys' fees incurred in connection with this motion in an amount to be determined.

## I.  INTRODUCTION

Salesforce should be required to reimburse non-party OCO for the over $35,000 in attorneys' fees non-party OCO incurred complying with Salesforce's subpoena. At the June 2 hearing on Salesforce's motion to compel, the Court compelled OCO to conduct an email review while acknowledging that it would "definitely" be "equitable" for Salesforce to cover at least some of the cost if OCO had to review "a lot of documents." 6/2/23 Hr. Tr. (Cole) at 42:4–7. The Court's guidance was consistent with Fifth Circuit precedent that "Rule 45 *requires* a district court to shift a nonparty's cost of complying with a subpoena if those costs are significant." *Leonard v. Martin*, 38 F.4th 481, 490 n.8 (5th Cir. 2022) (emphasis added).

OCO proposed reasonable, tailored ESI search parameters. Salesforce insisted on broad ESI search parameters, resulting in OCO's counsel having to review over 12,400 documents. OCO proceeded as efficiently as possible, but the costs of attorney review of that volume of documents are necessarily significant. Salesforce could have avoided imposing that burden, as Rule 45 requires. It sought instead to increase those burdens, while its fishing expedition resulted in only 15 responsive, non-privileged documents—all of which were captured by OCO's initial proposal.

Despite imposing undue burdens on a non-party, Salesforce has steadfastly refused to reimburse *any* of OCO's attorneys' fees. It has given OCO no choice but to seek Court intervention. Salesforce should be required to reimburse OCO for its attorneys' fees, including the attorneys' fees incurred in connection with the making of this motion.

1

## II.    STATEMENT OF FACTS

OCO is a non-party, minority owner of the Plaintiff and does not control the Plaintiff. Salesforce served a subpoena *duces tecum* and *ad testificandum* on OCO on November 18, 2022, in connection with *WSOU Investments, LLC v. Salesforce.com, Inc.*, Case No. 6:20-cv-01163 - 01172 (W.D. Tex.) ("Subpoena"). Following OCO's objections, Salesforce moved to compel compliance with the Subpoena on January 31, 2023. ECF No. 1.

At the motion to compel hearing on June 2, 2023, Salesforce's counsel claimed that it was only seeking a small set of documents. *See* 6/2/23 Hr. Tr. (Cole) at 21:14–16 ("I'm focused particularly on the transaction at hand, the 2021 transaction documents and what led up to that"); 21:21–22 ("It's a fairly tight timeframe and a fairly tight amount of documents."); 32:21–23 ("And I think the universe of documents we're talking about certainly now is a very small set of documents."). However, since Salesforce was seeking email discovery, OCO's counsel expressed concerns about the cost of attorneys having to sift through emails and warned that OCO would likely seek cost-shifting. *Id*. (Slocum) at 41:8–23. The Court stated that "if it winds up being a lot of documents and going to take a bit of time, it's definitely equitable for Salesforce to be tasked with covering some -- at least some of the cost of what it's asking for." *Id*. (Court) at 42:4–7. The Court then ordered the parties to meet and confer regarding the scope of the ESI search and review. *Id.* at 42:9–19.

Despite claiming at the hearing that it was focused on "a very small set of documents" relating to a May 2021 transaction (*see id*. (Cole) at 21:14–16, 21–22), Salesforce reversed course and insisted on OCO searching through several years' worth of emails from June 2017 to June 2023.

Salesforce and OCO submitted a joint status report on June 23, 2023. ECF No. 45. Shortly after, the Court issued its Order on E-Discovery Dispute, ordering "documents and emails to be

searched from June 1, 2017 to June 2, 2023 for any documents or emails that refer in any way to a 'key person provision' or any provision that could be reasonably interpreted as a key person provision and that reference Mr. Etchegoyen or could reasonably be interpreted as referring to Mr. Etchegoyen." ECF No. 46.[1] The Court's Order further stated that the Court "will consider cost-shifting in an amount to be determined after such searching and production has been complete." *Id*.[2]

OCO proposed a comprehensive but tailored set of search terms to run through its documents for the relevant date range that would have required the review of less than 1,400 documents. Declaration of Joshua M. Slocum ("Slocum Decl.") ¶ 2. Salesforce insisted on much broader search terms, eliciting over 19,000 documents to review. *Id*. ¶ 3. OCO provided Salesforce a hit report demonstrating the large number of documents Salesforce's proposed search strings brought in. *Id*. ¶¶ 5–6. OCO proposed narrowing certain terms but, to avoid burdening the Court with another dispute, acceded to most of Salesforce's parameters. *Id*. ¶ 4. Even after reviewing the hit report, Salesforce still insisted on broader parameters. *Id*. ¶ 7. After nearly a month of negotiating search terms, OCO reluctantly agreed to Salesforce's proposal, resulting in the need to review over 12,400 documents. *Id*. ¶ 8.

OCO incurred $39,763 in attorneys' fees for the negotiation and testing of search terms, review of the 12,400 documents, and preparation of the document production and privilege log. *Id*. ¶¶ 16–17. Despite reviewing over 12,400 documents, OCO's counsel identified only 15 responsive, non-privileged documents, 13 of which were merely draft versions of the Second Amended and Restated Operating Agreement of WSOU Investments, LLC—a document of which

---

[1] OCO began operations on January 1, 2019, and does not have emails in its possession prior to December 2018. Accordingly, OCO searched its emails from December 2018 to June 2023.
[2] Salesforce agreed to pay the costs for OCO's document hosting vendor, but as of yet has not done so.

Salesforce already possessed the final version. *Id.* ¶ 11. Only one of the produced documents was dated outside the month of May 2021, and Salesforce already had a copy of it. *Id.* And notably, all 15 documents would have been captured by OCO's initial search term proposal that would have required the review of only 1,400 documents.[3]

Shortly after its document production, OCO informed Salesforce that it incurred over $35,000 in attorneys' fees and requested reimbursement. *Id.* ¶ 12, Ex. A. Ten days later, Salesforce again refused reimburse any of OCO's attorneys' fees. *Id.* ¶ 13, Ex. B.

### III.  ARGUMENT

#### A.  Salesforce Must Reimburse Non-Party OCO For The Expenses It Incurred Complying With Salesforce's Discovery Demands

Rule 45 requires parties and the courts to avoid imposing significant expenses on non-parties. "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). An order compelling compliance with a subpoena "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." *Id.* at 45(d)(2)(B)(ii).

##### 1.  Salesforce Must Reimburse OCO Under FRCP 45(d)(2)(B)(ii) Because OCO Incurred Significant Expense Complying With Salesforce's Demands

Under FRCP 45(d)(2)(B)(ii), Salesforce is required to reimburse OCO because the cost of complying with Salesforce's subpoena was significant. FRCP 45(d)(2)(B)(ii) provides that a non-

---

[3] All 15 documents would have been captured by the following search term string from OCO's original search term proposal: (craig@WSOUinvestments.com OR Etchegoyen OR Craig OR WSOU OR Brazos OR Orange OR Salesforce OR Uniloc) AND: (key /2 (man OR person OR individual OR executive OR employee OR officer OR personnel)). Slocum Decl. ¶ 11.

4

party "must" be protected from significant expense resulting from compliance with a subpoena. *See Leonard v. Martin*, 38 F.4th 481, 490 n.8 (5th Cir. 2022) (citing Fed. R. Civ. P. 45). As a result, the Fifth Circuit and other circuits have recognized that cost-shifting for non-parties is *mandatory* when compliance expenses are significant: "Rule 45 requires a district court to shift a nonparty's cost of complying with a subpoena if those costs are significant." *Id.* (citing *In re Modern Plastics Corp.*, 890 F.3d 244, 252 (6th Cir. 2018); *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013); *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001)). "This language [in Rule 45(d)(2)(B)(ii)] leaves no room for doubt that the rule is mandatory." *Legal Voice*, 738 F.3d at 1184.

Salesforce's principal argument that it need not reimburse OCO's legal fees because of OCO's relationship with the Plaintiff (as an investor) is without merit. OCO is "neither a party nor a party's officer." Fed. R. Civ. P. 45(d)(2)(B)(ii). Its relationship with the Plaintiff (as an investor) is not a consideration. Rule 45(d)(2)(B)(ii) "provides no exceptions. . . . [T]he only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party." *Legal Voice*, 738 F.3d at 1184; *accord Leonard*, 38 F.4th at 490 n.8 (Rule 45(d)(2)(B)(ii) "requires" cost-shifting if compliance expenses are significant). This Court was fully aware of OCO's relationship with the Plaintiff during the June 2 motion to compel hearing and, consistent with Rule 45 and the governing precedent, recognized that cost-shifting would be warranted if OCO had to review a lot of documents. *See* 6/2/23 Hr. Tr. (Court) at 42:3–7.[4]

---

[4] Even when courts have considered a non-party's relationship to a party in determining cost-shifting, it is only one of three factors, and the other two factors weigh heavily in favor of cost-shifting here. The other two factors are: "whether the non-party can more readily bear its cost than the requesting party, and whether the litigation is of public importance." *Shields v. Elevated Energy Sols., LLC*, 2020 U.S. Dist. LEXIS 174515, at *7 (S.D. Tex. Sept. 23, 2020) (decided before *Leonard v. Martin*). Here, OCO, a small fund manager, clearly cannot more readily bear the cost than Salesforce, a global company with a market capitalization of over $100 billion and tens of thousands of employees. Additionally, the litigations between WSOU Investments, LLC and Salesforce are not of public importance as they are the only two parties to the litigations that will simply determine whether Salesforce is infringing on WSOU Investments, LLC's patents.

The $39,763 in expenses OCO incurred complying with Salesforce's subpoena is significant. Courts have found that far smaller amounts were significant. For example, the Fifth Circuit in *Leonard* collected case law finding that $20,000 is significant and suggesting that $9,000 may be significant. *See* 38 F.4th at 490 n.8 (citing *Legal Voice*, 738 F.3d at 1185; *Linder*, 15 F.3d at 182); *see also In re Beltway Law Grp., LLC*, 2017 Bankr. LEXIS 3802, at *9 (Bankr. D.D.C. Nov. 1, 2017) ("The court has no difficulty finding that [$10,087.50] is significant."). Thus, $39,763 is significant here, and FRCP 45(d)(2)(B)(ii) requires that those significant expenses be shifted to Salesforce.

### 2. Salesforce Should Also Have To Reimburse OCO Under FRCP 45(d)(1) Because Salesforce Imposed Undue Expenses On OCO

Under FRCP 45(d)(1), Salesforce should reimburse OCO because it failed "to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The Court therefore "must enforce this duty and impose an appropriate sanction" for Salesforce's noncompliance. *Id*. An appropriate sanction may include "reasonable attorneys' fees." *Id.* Rule 45(d)(1) does *not* require a showing of bad faith. *See In re Modern Plastics*, 890 F.3d at 251.

An award of attorneys' fees is appropriate here because, while OCO attempted to minimize expenses, Salesforce insisted on broader discovery, increasing expenses. First, Salesforce insisted on a six-year date range from June 2017 to June 2023 for OCO's search even though Salesforce's counsel acknowledged during the hearing that it was focused on a 2021 transaction. *See* Hr. Tr. (Cole) at 21:14-16 ("I'm focused particularly on the transaction at hand, the 2021 transaction documents and what led up to that"). While this Court later ordered OCO to search for responsive documents going back to 2017, it reiterated that it would "consider cost-shifting in an amount to be determined after such searching and production has been complete." ECF No. 46.

6

Salesforce was similarly aggressive during search term negotiations. After multiple rounds of negotiations, Salesforce insisted on broad search terms, which required OCO's counsel to review over 12,400 documents. Salesforce cannot claim that it did not know that its search term demands would require the review of many documents because OCO provided Salesforce a search term hit report. Slocum Decl. ¶¶ 5–6. Notably, OCO's initial search term proposal would have yielded only 1,400 documents, which encompassed *all* the responsive documents OCO eventually produced. *Id*. ¶¶ 2, 11.

Despite Salesforce's overbroad date range and search terms, its fishing expedition yielded only 15 responsive documents, 13 of which were merely draft versions of a document for which it already possessed the final version. *Id*. ¶ 11. Another was an email chain from July 2020, which Salesforce also had already. *Id.* To locate these documents, OCO had to review an excessive number of irrelevant documents and incur over $35,000 in attorney's fees—more than $2,000 per document produced. It is more than equitable for Salesforce to reimburse OCO's attorneys' fees for cavalierly running up OCO's expenses.

**B.     OCO Request For Attorneys' Fees Is Reasonable**

   **1.     OCO Strove For Efficiency In Responding To The Salesforce Subpoena**

To comply with Salesforce's discovery demands, OCO incurred $39,763 in attorneys' fees. The production of emails required attorney review due to the large number of irrelevant documents captured by the search terms, which included a lot of sensitive business and investment information about different investments. *Id.* ¶ 9. It was also necessary to review the responsive documents for privilege, especially since almost all of them concerned a 2021 investment transaction, on which OCO was advised by counsel. *Id*. ¶ 10.

7

These attorneys' fees are also reasonable. OCO retained Wollmuth Maher & Deutsch LLP, which staffed the matter efficiently with one partner, Joshua Slocum, and one third-year associate, Justin Zimnoch. *Id.* ¶ 15. OCO's counsel also provided a 10% discount on its fees for the document review and production. *Id.* ¶ 17. The fees are itemized in the Declaration of Joshua Slocum, filed herewith. *Id.* ¶¶ 16-17. And as described at length above, OCO's counsel advocated for more targeted search parameters, which would have reduced costs and still yielded all the responsive documents that were found.

### 2. Salesforce Should Not Be Rewarded For Its Failure To Comply With Rule 45

Salesforce's strategy in response to OCO's requests for fee-shifting has been sheer intransigence. It has flouted its obligations under Rule 45 to "take reasonable steps to avoid imposing undue burden or expense" on non-party OCO. Fed. R. Civ. P. 45(d)(1). Shortly after making its document production, and in a final effort to avoid burdening the Court with motion practice, OCO's counsel sent Salesforce's counsel a letter reiterating its request for reimbursement and inviting Salesforce to make an offer. Slocum Decl. ¶ 12, Ex. A. Ten days later, Salesforce's counsel finally replied, stating once again that it would not reimburse any of OCO's attorneys' fees. *Id.* ¶ 13, Ex. B. It has forced OCO to seek Court intervention to obtain any reimbursement whatsoever for its attorneys' fees.

It would set a dangerous precedent if parties could seek extensive discovery from non-parties without reimbursing attorneys' fees. *See Broussard v. Lemons*, 186 F.R.D. 396, 398 (W.D. La. 1999) ("When nonparties are forced to pay the costs of discovery, the requesting party has no incentive to deter it from engaging in fishing expeditions for marginally relevant material. Requesters forced to internalize the costs of discovery will be more inclined to make narrowly-tailored requests reflecting a reasonable balance between the likely relevance of the evidence that

8

will be discovered and the costs of compliance."). This Court has ample authority to "impose an appropriate sanction" on Salesforce. Fed. R. Civ. P. 45(d)(1).

Perhaps Salesforce hoped it could get away with paying nothing because the *in terrorem* effect of going further out of pocket would dissuade OCO from bringing this motion. Perhaps Salesforce believes that, even if the Court orders it to reimburse OCO, it will 'split the baby,' so there was no need to be reasonable with OCO. That would unfairly penalize OCO and incentivize parties to flout their Rule 45 obligations, as Salesforce has done. Salesforce's stonewalling should be punished—not rewarded. Salesforce should reimburse all the fees OCO incurred in searching for, reviewing, and producing documents in compliance with the Court's June 28 order, and in bringing this motion.[5]

## IV. CONCLUSION

Salesforce unnecessarily required OCO, a non-party, to incur significant costs by insisting on a six-year date range and broad search terms, which (as Salesforce knew) required OCO to review over 12,400 documents. This burdensome process elicited only 15 responsive, non-privileged documents, clustered within the month of May 2021. As a result, OCO respectfully requests that this Court grant its motion and order Salesforce to reimburse OCO for the fees it incurred, including attorneys' fees incurred in connection with this Motion in an amount to be determined.

---

[5] OCO does not seek reimbursement for any attorney's fees prior to the Court's June 28 order, which include the fees it incurred in reviewing the various contracts and transaction documents going back to 2017. It only seeks fees incurred for searching for and producing emails pursuant to the June 28 order, plus the fees incurred in bringing this motion (in an amount to be determined).

Dated: October 13, 2023

Respectfully submitted,

LYNN PINKER, HURST & SCHWEGMANN, LLP

By: /s/ *Jared D. Eisenberg*
Jared D. Eisenberg
Texas Bar No. 24092382
jeisenberg@lynnllp.com
Kyle A. Gardner
Texas Bar No: 24116412
kgardner@lynnllp.com
**Lynn, Pinker, Hurst & Schwegmann, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

WOLLMUTH MAHER & DEUTSCH LLP

Joshua M. Slocum (*admitted pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
jslocum@wmd-law.com

*Attorneys for Non-Party OCO Capital Partners LP*

## **CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for the OCO and Salesforce have conferred in a good-faith attempt to resolve the matter by agreement. On September 19 and October 3, 2023, OCO's counsel wrote to Salesforce's counsel requesting that Salesforce reimburse OCO's attorneys' fees. Salesforce refused to reimburse any of OCO's attorneys' fees.

/s/ *Jared D. Eisenberg*
Jared D. Eisenberg

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2023, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all CM/ECF participants.

                                             /s/ *Jared D. Eisenberg*
                                             Jared D. Eisenberg